IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>　　　　Plaintiff,<br>vs.<br>CHARLES A. THOMPSON, JR.,<br>　　　　Defendant. | CR 02-00382-TUC-JMR (GEE)<br>**REPORT AND RECOMMENDATION** |

　　　　The District Court referred this case to the magistrate for an evidentiary hearing on allegations the defendant violated conditions of his supervised release. The defendant and his attorney consented in writing to proceed before the magistrate and the evidentiary hearing was held on July 1, 2008. Upon consideration of the evidence presented, the magistrate recommends the District, after its de novo review, find the defendant violated the conditions of his supervised release.

**FACTS;**

　　　　On April 2, 2003, this defendant was sentenced to a 37 month period of incarceration and four year period of supervised release which commenced upon his release from prison on May 31, 2005. On July 28, 2006, a petition to revoke his supervised release was filed and on December 11, 2006, his supervised release was revoked. He was sentenced to "time served" to be followed by a 36 month period of supervised release. On December

4, 2007, another violation petition was filed and on April 24, 2008, his supervised release was revoked and he was sentenced again to "time served" to be followed by a 12 month period of supervised release. Most recently, on May 2, 2008, a supervised release violation petition was filed alleging the following violations: (A) he failed to report to the Probation Office on April 28, 2008; (B) he failed to notify the Probation Office 10 days before changing his residence; and (C) he failed to report in person to the Probation Office within 72 hours of his release from custody (on April 24, 2008).

## EVIDENCE:

### *Darren Myler*

Myler is a federal probation officer who took over the supervision of the defendant when Kathy Wirtz, another probation officer, went on extended leave. Myler stated he discussed the defendant's case with Wirtz before her leaving and has reviewed the file himself. The file established that on June 13, 2005, Wirtz reviewed the standard supervised release conditions with the Thompson. Myler testified Wirtz did not have the defendant initial each of the conditions; rather the list of conditions in the file is signed on the last page by Wirtz and Thompson. On April 24, 2008, Thompson was most recently released from custody. On April 25th Thompson notified Wirtz that he was staying at his mother's residence. On April 28th Thompson's mother called and advised Wirtz that the defendant had gone to a friend's home on April 25th, had taken his clothes with him, and had not yet returned to her (his mother's) home. There was nothing in the probation file indicating he had contacted Wirtz since April 25th to report an address change. Nor did he ever report in person to the Probation Office within 72 hours of his release on April 24, 2008. Furthermore, he has submitted no written monthly reports to the Probation Office since his release from custody in April, 2008.

On cross-examination Myler admitted he has had no personal contact with

Thompson, and that his in-court identification was based upon a photograph in the probation file. He also admitted there was no indication that following his disposition hearing on April 24, 2008, the conditions were again reviewed with the defendant. Reviewing the probation file, Myler noted Wirtz had recommended the judge revoke the defendant's supervised release and impose a sentence of 12 months and a day, with no additional supervision to follow. That Wirtz was not at the disposition hearing, but another probation officer covered for her and entered notes in the file. Myler testified the file indicates that at the disposition hearing the court revoked the supervised release, sentenced the defendant to "time served", and imposed 12 months of supervised release with a condition that the defendant reside in a residential treatment program for up to 12 months. This was a departure from the anticipated plea agreement and the note in the probation file indicates the defendant told the court he "needs help and wants to be back on supervised release." The defendant advised the court he had no family support and no place to stay upon his release. The file further indicates the defendant was to be released from custody that afternoon and was apparently disappointed when told he would have to get to Phoenix on his own as no transportation could be provided for him. He was advised to report to the probation officer within 72 hours. Myler testified that Wirtz noted in the file herself that the defendant called her on April 25, 2008, and advised he was staying with his mother.

### *Charles Thompson*

Thompson testified that prior to his disposition hearing on April 24, 2008, he had reached a plea agreement with the government that his supervised release would be revoked and he would receive a sentence of 12 months and one incarceration. However, during the disposition hearing he told the judge he wanted to return to Recovery Homes, a half-way house, so that he could get a job, save money, and be in a better position to re-integrate into society than if he was merely incarcerated and released upon completion of his sentence. Thompson stated he had previously resided at Recovery Homes. He was released from

1  federal custody in Tucson on the evening of April 24, 2008, and his mother picked him up
2  and they drove to Phoenix where his mother lived and where Recovery Homes was located.
3  He spent the night at his mother's but she told him he would have to make other living
4  arrangements as she did not want him to stay with her.
5        On the morning of April 25th he first contacted Recovery Homes and then called
6  Wirtz, his probation officer. He left a message on Wirtz's answering machine that there
7  would not be a bed for him at Recovery Homes until mid-May and that he intended to ask
8  his mother if he could stay with her in the interim. Wirtz called him back at his mother's
9  home and "was noticeably upset" that he was out again on supervised release. Since there
10  was no space for him at Recovery Homes, Wirtz advised the defendant she wanted him to
11  reside at the Salvation Army for six months and than at another halfway house for the
12  remaining six months. Wirtz initially told Thompson to come to the probation office on that
13  day (Friday); however, after he told her he had no money and no transportation, she directed
14  him to report on Monday. Thompson testified he agreed to go the probation office on
15  Monday, but decided not to go because he did not want to reside at the Salvation Army.
16  Thompson testified he has had "problems" with halfway houses since 2004 and felt if he
17  went to the Salvation Army he would relapse and end up back in prison. He stated he never
18  called Wirtz regarding his living arrangements because he never really had a place to live.
19        In response to this court's questioning, Thompson admitted that after the 25th he
20  did not go to Recovery Homes, and had no further contact with Wirtz.
21        On cross-examination, Thompson admitted that on the 25th he told Wirtz he
22  would try the Salvation Army residential program.
23
24  **DISCUSSION:**
25        In view of the evidence presented, this court finds the government has established
26  by a preponderance of the evidence that the defendant violated his supervised release as set
27  forth in the violation petition. Thompson testified he spoke personally with Wirtz on April
28

25, 2008, and she initially told him to come to the probation office that same day; however, after he told her he had no transportation she told her to come to the office on Monday the 28th. He told her he would go on that date, but testified he subsequently changed his mind and did not go to the office as directed. Thompson testified he advised Wirtz on the 25th he had spent the previous evening with his mother; although he claims to have told Wirtz he could no longer stay with his mother he admitted he never contacted Wirtz after the 25th to advise her of his whereabouts. (He was subsequently arrested on the violation warrant on June 4, 2008.) Furthermore, Thompson admitted he never personally reported to the probation office as directed within 72 hours of his release on April 24th; presumably his compliance with Wirtz's direction to report on the 28th would have satisfied the 72 hour deadline.

Defense counsel and Thompson argue the defendant was upset because he felt Wirtz was not complying with the court's order that he reside at Recovery Homes. However, a review of the Judgment and Commitment dated April 29, 2008, shows that the court ordered the defendant to "reside and participate in a residential treatment center for 12 months," the court did not order, but merely recommended Recovery Homes. Furthermore, the defendant testified that when he contacted Recovery Homes on April 25th, he was told there would be no bed space available until mid-May. Defense counsel stated the defendant did not know what to do and so "decided not to go back and to come back in front of court, and here we are." However, this court believes other options were available to the defendant, especially if he were truly interested in demonstrating his own "good faith" and having the court's order clarified and carried out. Whether or not Wirtz was displeased with the prospect of continued supervision of the defendant, she ultimately demonstrated her professionalism by relenting and giving him until the 28th to personally report to the probation office (after he explained his transportation difficulties) and by complying with the court's order by recommending residence at the Salvation Army.

**RECOMMENDATION:**

In view of the foregoing, the magistrate recommends that the District Court, after its independent review of the record, find the defendant violated the conditions of his supervised release as set forth in the petition. Any party may file and serve objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. If objections are filed, the parties should direct them to the District Court **by omitting the magistrate's initials from the caption.**

This Report and Recommendation is being faxed to all counsel on today's date. The Clerk of the Court is directed to send a copy of this Report and Recommendation to all counsel.

DATED this 19th day of August, 2008.

Glenda E. Edmonds
United States Magistrate Judge